IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| JOYCE ETTA HARPER, *Executrix and Administratrix of the Estate of Glenn Ray Bass, Sr.*, <br>     Plaintiff, <br><br>     v. <br><br> PNC INVESTMENTS, LLC, <br>     Defendant. | Civil Action No. 2:20CV445 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on PNC Investments, LLC's Motion for Summary Judgment (ECF No. 27). The Motion has been fully briefed, and the Court dispenses with oral argument because the material before it adequately presents the facts and legal contentions, and argument will not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion.

**I. FACTUAL HISTORY**

The Court will recount the relevant background facts surrounding the claim of Plaintiff, Joyce Etta Harper, Executrix and Administratrix of the Estate of Glenn Ray Bass, Sr., ("Plaintiff"), against Defendant, PNC Investments, LLC ("Defendant"). These facts are undisputed by the parties and all inferences from these facts have been viewed in the light most favorable to Plaintiff.

On or about December 12, 2013, Glenn Ray Bass, Sr., ("Senior") and Glenn Ray Bass, Jr., ("Junior") opened a brokerage account ("Account") with Defendant at a branch in Accomack

1

County. (Account Appl., ECF No. 28-2 at 11.)[1] The Account was a joint account that they opened as tenants with rights of survivorship. (*Id.* at 3.)

The Account was governed by the PNCI Brokerage Account Customer Agreement ("Agreement"). (Agreement, ECF No. 28-4 at 4.) In regard to enforcement of the Agreement, it states, "We or NFS [National Financial Services LLC] may enforce this Agreement against all account owners or against any owner individually." The Agreement also states:

> We and NFS reserve the right to require, at any time, the written consent of all Account owners before acting on an instruction from any Account owner, but we or NFS will use this right only at our own discretion and for our own protection.

(*Id.*) Another clause in the Agreement provides that:

> In maintaining and/or executing instructions for any Account, we may require additional documentation, and we reserve the right to restrict trading, disbursements, transfers, or to take no action in an Account. This shall also apply to any disputes or conflicting instructions between Account holders.

(*Id.* at 13.)

In March 2018, Senior was admitted to the Hartley Hall Nursing & Rehabilitation Center where his physician diagnosed him as suffering from dementia and delusions. (ECF Nos. 28-5, 28-6, and 28-7.) In April 2018, Senior's three other children, but not Junior, took Senior to meet with Attorney David Rowan ("Rowan") to have him revoke Junior's power of attorney and make a new will for Senior. (Dep. of Rowan at 14:10-25, ECF No. 28-8.)

On May 15, 2018, Rowan called Craig Booth ("Booth"), Senior's financial advisor at Defendant, to discuss the Account. (*Id.* at 54:22-55:22.) Following up on the call, on June 4, 2018, Rowan sent a letter to Booth on Senior's behalf claiming that Senior was the sole owner of the funds in the Account and requesting that Defendant "transfer the entire balance of this account to a separate account titled solely in the name of Glenn Bass, Sr." (ECF No. 28-10.)

---

[1] The Court uses the page numbering assigned by the CM/ECF system unless otherwise noted as a deposition.

2

On July 20, 2018, Carolyn Thompson ("Thompson") in Defendant's legal department responded to Rowan's letter on behalf of Defendant. (ECF No. 28-12.) In the letter, Defendant exercised its discretion to "require written consent from both owners of the account prior to transfer and/or release of the assets held therein." (*Id.*) After several calls from Rowan, on July 24, 2018, Defendant's legal department directed that the Account be frozen. (Dep. of Thompson at 11:13-24, ECF No 28-11.) Defendant never received a joint instruction to liquidate or transfer the Account. (Dep. of Junior at 46:16-50:11, ECF No. 28-3.)

On July 25, 2018, Rowan notified Thompson that Senior died. (Dep. of Thompson at 11:20-12:4.) On August 29, 2018, Rowan sent a letter to Junior on behalf of Senior's estate challenging the ownership of the funds in the Account and requesting that Junior relinquish the funds to the estate. (ECF No. 28-13.) Junior then filed a declaratory judgment action against Defendant and his siblings in the Circuit Court for Accomack County, claiming that Senior intended for the Account to pass to Junior on Senior's death and that he was the rightful owner of the funds. (ECF No. 28-14.)

Defendant was dismissed from the state court action when it interpleaded the funds from the Account with the state court pending resolution of the ownership dispute. (ECF No. 28-15.) On June 2, 2020, the Circuit Court for Accomack County found in favor of Junior. (ECF No. 28-16.) That decision was appealed, and a writ was granted by the Supreme Court of Virginia. (Mem. Opp'n, ECF No. 29 at 22.)

## II. PROCEDURAL HISTORY

Plaintiff originally filed her Complaint in the Circuit Court of Accomack County on July 20, 2020, and Defendant removed the action to this Court on August 28, 2020. (ECF No. 1.) Defendant then filed a Motion to Dismiss Plaintiff's Complaint on September 4, 2020. (ECF No.

3

4.) In response, Plaintiff filed her Amended Complaint on September 17, 2020. (Am. Compl., ECF No. 6.)

On January 19, 2021, the Court ordered the parties to file supplemental memoranda addressing whether Pennsylvania or Virginia law applies to this action. (ECF No. 19.) This briefing was completed on February 1, 2021. (ECF No. 23.) Defendant filed the instant Motion for Summary Judgment on April 29, 2021. (ECF No. 27.) Plaintiff filed a response in opposition on May 10, 2021, and Defendant filed a reply brief on May 17, 2021, at which the Motion became ripe. (ECF Nos. 29-30.)

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure provide the standard of review for this case. Rule 56(a) states that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). However, "'[t]he mere existence of some alleged factual dispute' cannot defeat a motion for summary judgment." *Stallard v. Bank of Am., N.A.*, 137 F. Supp. 3d 867, 871 (E.D. Va. 2015) (quoting *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001)).

The Court must view the evidence "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (citing *Baynard v. Malone*, 268 F.3d 228, 234 (4th Cir. 2001)). There is no burden on the moving party, however, "to produce evidence showing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986.) "Instead . . .

4

the burden on the moving party may be discharged by "showing" . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

### IV. CHOICE OF LAW ISSUE

As discussed in the Court's January 19, 2021 Order (ECF No. 19), the parties, in their memoranda addressing Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF Nos. 7-8), reference only Virginia law. The Agreement, however, provides: "This Agreement and its enforcement are governed by the laws of the Commonwealth of Pennsylvania, except with respect to its conflict-of-law-provisions." (Agreement at 14.) The Fourth Circuit holds that "[as] a federal court sitting in diversity, we must apply the choice of law rules of the forum state—in this case Virginia . . . Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F. 3d 614, 623-624 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)). Because of this discrepancy between the Agreement and the parties' briefs, the Court ordered the parties to file memoranda addressing whether Pennsylvania or Virginia law controls. (ECF No. 19.)

Defendant argued that it did not waive the Pennsylvania choice of law provision, but, because "Pennsylvania and Virginia law are nearly identical with respect to the elements of a breach of contract, whether this Court applies Pennsylvania law or Virginia law does not change the ultimate result . . . ." (Def.'s Suppl. Mem., ECF No. 22 at 1.) Plaintiff argued that Defendant has waived the Agreement's choice of law provision, but she agrees that "Pennsylvania and Virginia law are substantively similar or identical" for the breach of contract analysis. (Pl.'s Suppl. Mem., ECF No. 23 at 2-4.)

The Court finds that Defendant waived its right to enforce the Agreement's choice of law provision. The Fourth Circuit upheld a choice of law provision in *Grecon Dimter, Inc. v. Horner Flooring Co.,* in which the party seeking to enforce the provision made their desire to do so "clear at the pleading stage." 114 Fed. App'x 64, 67 (4th Cir. 2004). In its decision, the Fourth Circuit cited other cases in which courts had found there to be a waiver of the choice of law provision when the parties ignored a choice of law provision for a longer period of time. *Id.* at 66-67 (citing, *inter alia*, *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) ("[E]ven when the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's laws.") (citation omitted)). In this case, Defendant cited only Virginia law in its memorandum in support of its original motion to dismiss (ECF No. 5), its memorandum in support of its motion to dismiss that was filed after the Amended Complaint was filed (ECF No. 8), and in its reply (ECF. No. 10). Defendant only asserted its desire to use the choice of law provision after the Court raised the issue in its January 19, 2021 Order. The Court, therefore, finds that Defendant's conduct during litigation indicated its assent to the application of Virginia's laws, and that it has waived its right to the choice of law provision. As Virginia and Pennsylvania law are substantially similar for breach of contract analysis, this finding will not materially affect the Court's decision.

## V. DISCUSSSION

The crux of this action is whether Defendant breached its contractual obligations to Senior when it did not allow him to withdraw or transfer the funds from the Account when Rowan requested it. (Am. Compl. ¶ 24.) Defendant argues that it merely used its expressly reserved right to require, at any time, the written consent of all Account owners before acting on an instruction

6

from any Account owner, and that its actions did not cause Plaintiff any actual damages. (Mem. Supp. at 10.) The Court agrees with Defendant.

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Rogers v. Deane*, 992 F. Supp. 2d 621, 629 (E.D. Va. 2014) (citing *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)), *aff'd* 594 F. App'x 768 (4th Cir. 2014). Additionally, "proof of actual damages is an essential element of a breach of contract claim." *Id.*

Plaintiff has not been able to point out a legally enforceable obligation of Defendant to Plaintiff that Defendant breached. The Agreement clearly states that "[Defendant] and NFS reserve the right to require, at any time, the written consent of all Account owners before acting on an instruction from any Account owner, but [Defendant] or NFS will use this right only at our own discretion and for our own protection." (Agreement at 4.) This right is unqualified. There are no terms in the contract that limit Defendant's reservation of this right or Defendant's discretion in using this right. Therefore, Senior did not have a unilateral, unqualified right to withdraw his funds at any time, and Defendant did not breach the contract by not allowing him to do so. Plaintiff argues that the clause stating that Defendant "will use this right only at our own discretion and for our own protection" required Defendant to express a basis for exercising its discretion or state why it needed protection. (Mem. Opp'n at 2.) Defendant, however, is not required by the Agreement to provide a justification for its use of its right. Plaintiff has provided no evidence suggesting that providing an explanation was necessary or something that Defendant did in other instances.

7

Plaintiff also argues that the provision entitling Defendant to "take no action on an Account" is written in the context of situations pertaining to disputes among account holders. (Mem. Opp'n at 21.) To this end, she argues that there were no conflicting instructions and that Defendant has failed to establish that there was a dispute between Senior and Junior. (*Id.* at 21-22.) However, when read in conjunction with the preceding sentence and the succeeding sentence, this is not the case. The clause states:

> *In maintaining and/or executing instructions* for any Account, we may require additional documentation, and we reserve the right to restrict trading, disbursements, transfers, or to take no action in an Account. This shall *also* apply to any disputes or conflicting instructions between Account holders.

(Agreement at 13) (emphasis added.) The preceding sentence makes it clear that the right to take no action, along with the right to restrict transfers, pertains to situations when there are instructions to act on an Account. The succeeding sentence does not constrain this right. Instead, it provides Defendant with additional situations, disputes among owners and conflicting instructions, in which it can exercise this right. Thus, it is immaterial whether Junior and Senior gave conflicting instructions or had a dispute related to their joint account. Defendant had the right to take no action even when there were no disputes or conflicting instructions.

Plaintiff also tries to introduce other extrinsic evidence, such as the intentions of the parties when opening the account. (Mem. Opp'n at 33.) Plaintiff relies heavily on *Buck v. Jordan*. 508 S.E.2d 880 (Va. 1998). In *Buck*, a father and daughter owned an investment account jointly with rights of survivorship. *Id.* at 881. After learning that the daughter had been withdrawing large sums of money, the father attempted to withdraw all the funds from the account. *Id.* at 882. A representative of the investment company incorrectly stated that withdrawing the funds would result in a check in both the father and daughter's names. *Id.* After the death of the father, the executor ("the Estate") then filed suit against the investment company for a declaratory judgment

8

that the executor was the owner of the funds. *Id*. The investment company then sought to interplead the funds. *Id.* The Estate then filed a cross-bill alleging breach of contract and constructive fraud. *Id.* The Estate introduced evidence about the intent of the father and daughter at the time the account was created. *Id.* at 883. The Estate claimed, as does Plaintiff, that the account was created for the convenience of the father, and the funds should go to the Estate. *Id.* at 883-84. Plaintiff relies on the determination of the Supreme Court of Virginia, that the trial court did not err by allowing the Estate to present evidence on intent. *Id.* at 884. However, the court was addressing the issue of ownership of the funds, not the issue of whether the investment company had breached the contract.[2] *Id.* While potentially relevant to the issue of ownership being litigated in state court, this argument is irrelevant to the current breach of contract action.

Plaintiff further argues that Defendant somehow committed a breach of its contract with Senior based on a state statute. Va. Code Ann. § 6.2-608(A). The statute provides that "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time that the account is created." *Id.* This provision, however, has no effect on this action or the present breach of contract claim. Like the convenience account argument, this argument would be better served in the state court declaratory judgment action that seeks to resolve the issue of ownership of the funds from the Account.

In addition to not being able to show how Defendant breached a legally enforceable obligation of Defendant to Plaintiff, Plaintiff has not been able to provide any evidence of actual damages. "[A] plaintiff must show a causal connection between the defendant's wrongful conduct

---

[2] On the issue of breach of contract, the court granted the insurance company's motion for summary judgment, as nothing in the account agreement obligated the company to issue a check in one account holder's name. *Buck*, 508 S.E.2d at 884.

9

and the damages asserted." *Saks Fifth Ave., Inc. v. James, Ltd.*, 630 S.E.2d 304, 311 (Va. 2006). Plaintiff bears "the burden of proving that [her] damages were 'proximately caused by wrongful conduct.'" *Id.* at 312 (quoting *Hop-In Food Stores, Inc. v. Serv-N-Save, Inc.,* 440 S.E.2d. 606, 608 (Va. 1994)). There is no evidence that Defendant caused Plaintiff any damages. Defendant, for example, did not give all the account funds to Junior either prior to or after Senior's death. Instead, Defendant interpleaded them with the state court to allow that court to determine proper ownership of the funds. (ECF No. 28-15.) The funds have not been diminished in any way, and they have not been distributed, as the state court action is still pending before the Supreme Court of Virginia. Because Plaintiff has not been able to show any actual damages caused by Defendant, its breach of contract claim fails.

None of Plaintiff's arguments succeed in creating a genuine dispute of material fact, and the Court finds that Defendant is entitled to judgment as a matter of law.

## VI. CONCLUSION

Therefore, for the foregoing reasons, the Court will grant PNC Investments, LLC's Motion for Summary Judgment (ECF No. 27).

An appropriate Order shall issue.

```
                              /s/
                      Roderick C. Young
                      United States District Judge
```

Richmond, Virginia
Date: September 13, 2021